First case this morning is BECWAR v. LABOR. Mr. Jahnke. Jahnke, your honor. Jahnke, thank you. May it please the court, my name is Michael Jahnke and I'm here today representing the appellant Deborah BECWAR. Ms. BECWAR is seated at the table to my right. She traveled from Wisconsin to be here today. Ms. BECWAR represented herself pro se below, and I think did a good job in that respect, but obviously she didn't prevail below. And so when we took on this case on a pro bono basis, that was on the basis of our belief in the very strong merits of her case. So I'll briefly explore those merits with you without getting into too much of what's in the brief and subject, of course, to whatever questions you have. Mr. Jahnke, if you could move your head up and speak a little louder, please. Certainly, your honor. Thank you. So Ms. BECWAR served our country as a member of the military, active and National Guard, for almost 25 years and as a member of the federal service for 17 years. She performed that federal service at the Department of Labor, an agency that's expected to be a model employer generally and specifically, as to you, Sarah, the statute at issue in this case, which was enacted to protect people like Ms. BECWAR. But instead of being appreciated for her service at a time when the National Guard Reserve was being called on at historic levels for help in the war on terror, Ms. BECWAR suffered deliberate adverse action by the agency that is supposed to be the enforcer of her rights for no reason other than her military service. With all due respect, that's important context here that the agency charged with enforcing this law treated one of its own in this matter. For almost her entire time at the agency, Ms. BECWAR had a stellar record. There is no dispute that she received consistent promotions each year in the January-February time frame, including January 2001, January... Mr. Jahnke, where is the error that requires us to do something different or to send this back for more proceedings? Well, the error, Your Honor, is that there basically was a fundamental error made by the administrative judge in imposing on Ms. BECWAR a burden of proving entitlement. Well, that was corrected by the board, so let's talk about what the board did. That's really what's before us. With all due respect, Your Honor, the board acknowledged that error, but they didn't correct it because they essentially rubber-stamped it. They did not go back because they couldn't. They were not there to observe the witnesses. They were not there to make credibility determinations. So they were not there to... They could not present it with a record where there were no findings made as to whether Ms. BECWAR met her burden. There were no findings made as to whether the agency met their burden. This was a record that was devoid of any findings on the basics of error burdens. So when the agency was presented with that record and when they essentially... So that basic error, it's remarkable that the A.J. even made it, but that error permeated the proceedings from then on out. That's your argument? It absolutely did, Your Honor, and there is a number of signs of that permeation. It's not just the evidentiary rulings that he made, although certainly those are something we've talked about in our briefs. But it's in the fact that when he was listening to the testimony, when he was writing his opinion, when he was making his decision, his entire mindset was that the only issue presented to him effectively was whether Ms. BECWAR proved her entitlement to a promotion. That's all she needed to do. So again, he didn't make determinations as to the agency's burden as to her burden. And so it really did fundamentally alter the entire proceeding because there really was never even an effort to make a determination whether she met her burden or whether the agency's met it. For purposes of argument for the moment, if I may, let's assume that she established for pondered evidence that her military absences were a violation of USERRA or their treatment. It was a motivating factor because, in particular, the evidence about one of the people, I have her name somewhere here. Clark? No, it was the original... Ms. Thomas? Ms. Thomas, yeah. The evidence about Ms. Thomas, right, that's the one, Shirley Thomas, was rather clear. All right, let's assume for discussion purposes she's done that. Now, their answer is, well, even so, she didn't qualify for GS-12 because, and then they had all this evidence about it. What can we do with that except, I mean, that's a judgment call by the supervisory staff. How do we deal with that? Well, I think what you do is you look at that under the, at minimum, the substantial evidence standard. And you're going to look, because that's statutorily set here under USERRA, and you're going to look to whether there was substantial evidence. Well, if you look at substantial evidence, it seems to me the testimony of Carl Stahlhaber, who was her witness, he testified, basically, that he didn't think she was performing at the GS-12. He was the most favorable witness she had. I actually think, Your Honor, that Carl Stahlhaber's testimony was also fundamentally misconstrued because both the administrative judge and the MSP found that he admitted to creating a paper trail. And that's very important here, that both agencies essentially found that he admitted to creating a paper trail. And he did, in fact, refuse to stand by some of his determinations, some of the records that he created on the basis of that paper trail. So, essentially, you've got both the ALJ and the MSTB saying that there was that paper trail that he created. But then what they do with it is they essentially ignore it and rely on that paper trail. So that, I think, is a fundamental problem for them under the substantial evidence standard. The record supports that because there's a lot of testimony from Mr. Stahlhaber, which reinforces the testimony from Hawkins and from Crack, that over time they had come to this evaluation of her performance. You don't challenge the fact that she had to perform at a GS-12 level in order to be entitled to that? Oh, in fact, we do, Your Honor. You do? Yes, because that was a third criteria for promotion that only came into effect in the fall of 2004. This decision was made effectively in February of 2004. That's the denial of the promotion that we're complaining about here because that's the time frame that, as I started to say, that all of her other promotion decisions were made. And for no explanation whatsoever here, the agency wants this court and one of the MSTB to extend that period out to September so that they can employ that third criteria and say that she had to prove that she was essentially performing at the GS-12 level. And we would also urge the court to consider that, and by the way, the documents are very clear on that point. The documents relied upon by the agency are dated in the fall of 2004. The only document that was in effect in describing what you need to show to get a clear career-lateral promotion in February of 2004 completely omits that standard that was added to the collective bargaining agreement and the regulations in the fall of 2004. And there is no explanation for why we should move that period out after a three-year pattern of always making the decision in February to suddenly doing it in September other than for the fact that they wanted to do that so that they could create this paper trail. That's also the only way that they get in all of Rodney Hawkins' testimony because Mr. Hawkins came in as her supervisor after the decision was made in February 2004. So what you have in terms of the agency showing they would not have promoted her, and again, the MSPB, the administrative judge, did not find that. But what you have is Mr. Stahlhaber's testimony, which the only way to rationally reconcile Mr. Stahlhaber's testimony when he admits to creating a paper trail and yet does create these bad records or records of poor performance is to say he created records of poor performance but it was part of the paper trail. The agency would have you completely disregard that paper trail admission and focus only on the fact that he created records of poor performance. So looking at Mr. Stahlhaber's testimony as a whole and giving it credibility, accepting the determination that were made, you're left with this notion that this was somebody who had no bias. He was coming in to testify for the employee on the basis of his belief that she was wrong and that there was a paper trail that he had to admit to creating. If he really believed she didn't have good performance to be promoted, he could have very easily just said, you know what, even if I got that instruction, it didn't matter because I didn't believe she had good enough performance. I didn't rely on that, but instead he admitted, I don't know, not really, I don't stand by these records because this was part of a paper trail. And the other thing he did was focus consistently on the subjectivity of the standards, that there really was no objective elements to be enforced here and that this was an environment where discrimination could flourish on the basis of those standards being so subjective. What does it mean to show ability to perform at the higher level? That's basically saying, that's basically defining what happens when you get a promotion, you're performing at a higher level. It doesn't show what it means to be performing at a higher level. Was Ms. Bekvar pro se before the board? Yes, she was. And before the AJ? Yes. Yes. And the other element that I want to emphasize on this third criteria is, well I guess because I already said, it was not in place at the relevant time. And there's been no showing whatsoever as to why we should have altered the standard procedure to extend out this period. And it's also, that's again the only reason that you get all of Rodney Hawkins in. So if you take out Rodney Hawkins, you look at Carl Stahlhaber's testimony as something that was completely tainted by the paper trail, and then you look at Margaret Crack. Margaret Crack was someone who admitted that it essentially wasn't within her bailiwick to be reviewing Ms. Bekvar's performance. While Ms. Bekvar was on the job and while this determination was being made. It was only after the decision was made that essentially Ms. Crack came in and made all these determinations supposedly as to her performance. And even Ms. Crack also said that there was elements of, everyone admits by the way, the duties of a GS-11 and GS-12 are exactly the same. So the only difference is supposedly this notion of ability to work independently. But Ms. Crack said that GS-11 employees are also expected to work with some degree of independence. So when you've got the notion that even GS-11 are expected to work independently and all the other duties are the same, what is the difference between these two? And that's why up until February 2004, it really was the situation, and this is our position, that you get, you perform at the GS-11 level, you meet your expectations, you get official confirmation that you performed at those levels as Ms. Bekvar did consistently. Her official reviews in the fall of 2003... John, would you like to preserve the rest of your rebuttal time? Oh, yes. Thank you, Your Honor. So I will just wrap up for now then by saying that when the Court is considering a standard here, I would strongly urge you to look at, for example, the Erickson case that this Court decided, where there was a substantial evidence determination made that the Board did not show substantial evidence in support of this case. The Board had articulated three reasons for why there was substantial evidence. The Court has consistently struck those down for policy reasons. And whereas here, we have a paper trail, we have subjective standards, we have no basis for extending the review period to bring in all this evidence of poor performance that first arose during the extended period. There's nothing before the decision was made, not a single document, that there is no substantial evidence to support the determination here. Thank you, Mr. Jahnke. Thank you. Mr. Regner. Thank you. May it please the Court. The decision of the MSPB upholding the Department of Labor's determination not to promote Ms. Beckwar to GS-12 is supported by substantial evidence. The record establishes that Ms. Beckwar did not carry her burden of proving that her military service was a substantial motivating factor in her non-promotion. Moreover, the government did, in fact, prove that Ms. Beckwar would not have been promoted regardless of her military service because she could not perform. How did they do that? How did they do that? Well, through the credible testimony of Ms. Kroc, of Mr. Stahlhaber, who we've already addressed a little bit, and Mr. Hawkins as well. And each of them testified at length, and the documentary evidence, of course, testified at length about numerous projects occurring prior to the time that the decision was made in which she simply could not perform. In some cases, even at the GS-11 level, but certainly at the GS-12 level, the U.S. Foods Project, the John Deere Project, and there are several others as well. But it wasn't – it isn't like she was a new employee, you know, unfamiliar with the work and on trial and, you know, she couldn't quite handle it. She began in 1998. She was promoted in 1999, 2001, 2002, 2003, 2004. She became eligible for promotion. She apparently was a pretty good employee. Well, she certainly performed well at below the GS-11 level when she received some meets expectation evaluations at the GS-11 level. But by April of 2004, she had gotten a very negative review from Mr. Stahlhaber on her work at the GS-11 level. And prior to that time in February, the agency had already considered putting her on a pit because of inability to perform. Well, that whole process is under some cloud, don't you? Wouldn't you concede that in view of Ms. Thomas' orders, which the record doesn't challenge, that she didn't like employees taking leave and Ms. Beckwar was taking a good bit of leave because of her military service? So those entries are, the record suggests those entries were, as counsel said, making a paper trail rather than genuine evaluations. Isn't that in the record? Well, that is not what the administrative judge relied upon. I know what the administrative judge did, but in the record. Ms. Thomas denied the allegations that she had any discriminatory motive. But even if we look at Ms. Bartuka's testimony, and specifically what she described was a plan whereby Ms. Thomas would have one of the managers assign work to Ms. Beckwar in a way that would interfere with her military leave. And this administrative judge spent some time looking at that allegation, and he did not find Ms. Bartuka credible. He excluded her from those findings, but instead he did something more. He looked at what did she say and did it match up with the rest of the evidence, and it didn't. What was never shown at the hearing was any instance where an assignment was given to Ms. Beckwar that interfered with her military leave. That was the manner by which she attempted to… …an attitude that was contrary to the requirements of USEPA, so USERA. So that whole bit, and I noticed you made a bit of that, that's all irrelevant. I understand that, Your Honor. Under USERA, there's two steps to the analysis. One is whether Ms. Beckwar shows that there is a discriminatory motive. And I would suggest to you under the Staub case, the Supreme Court case which discussed the cat's paw analysis, where the person who makes the decision himself does not have an animus towards her military service, but somebody at the supervisory level may. And if the determination by the person at the field level, Mr. Stelhaver or Mr. Hawkins in this case, was made on the merits, on whether she was actually performing, then that does not satisfy the cat's paw analysis, and that survives USERA. That is, perhaps she has shown an animus by somebody at a supervisory level, but there's no proximate cause between that animus and what actually occurred in the field. Except that there's testimony in the record to the contrary, but go ahead. I hear you. With respect to Mr. Stelhaver, I respectfully disagree. Mr. Stelhaver testified that what his task was to do was to make an independent determination of whether, and make an argument as to whether the agency should or shouldn't take a particular personnel action. And in this case, he went in there and he looked at her performance, he documented her performance, and with respect to, there's nothing wrong with a paper trail. Who was the individual who made the final choice on whether to promote her or not? Rodney Hawkins. Now, Mr. Hawkins is not involved in the Kroc, Thomas, Stelhaver paper trail allegations, is he? No, no. Mr. Hawkins took over Mr. Stelhaver's position sometime in the summer of 2004. And he's a former master sergeant and kind of immune from any sense of military discrimination motive, isn't he? Yes, Your Honor. He's a 24-year veteran of the service, and there was no allegation that Mr. Hawkins had anything but purist motives in doing what he was doing. He's certainly outside of the scope of the conspiracy, if you will. That's an awful word. But the plan that was described by Ms. Bartuka, who we again emphasize is not found credible. Mr. Hawkins testified that he made his decision based on two things. One was his own analysis of her work as a supervisor, as her supervisor, and then also conversations with Mr. Stelhaver that were after whatever clout he felt like he was under had already passed. He also testified that he did not make his decision at the instruction of Ms. Crock or anybody else, that he made it based on the merits of what he saw in her performance. And he wrote up that performance and described it quite accurately in the August 2004 memorandum, that perhaps someday she might be able to perform at the GS-12 level. She hadn't shown it so far, and that he was going to take a particular interest in trying to get her up to speed to be able to do that. But she wasn't there at the time that he made the decision. Mr. Stelhaver plays an interesting role in all of this. What happened to him? I don't know, but in 2004, according to what happened in the record, he came in and he was hired at that managerial level, whatever that was described, but the step above Ms. Beckwar. During the summer of 2004, he decided that he would rather be doing work in the field. The reason why we trial attorneys is because guys like to do the work in the field rather than spend all day doing personnel things. So it was a personal decision to go do the work he liked instead of the managerial work that he did not. He took a reduction in rank to do that. Yes, and that's the point at which Mr. Hawkins came in and then looked at the matter independently. With respect to the paper trail, Mr. Stelhaver never testified that he ginned up or cooked up a false paper trail. He testified that he looked at the work that she did, that he wrote it up, and at trial he stood by the statements that he made back in 2004. And that testimony is at page 8 in the record. It's 284 and 85. And what the question was, was Mr. Stelhaver, I was in the midst of asking you basically whether what you said in these memos was true and you were in the process of answering my question. He says yes, and ultimately the attorney asks, the answer to my question is, is the information you have here correct? And he says, sure, he stands by the record. He came back and distinguished between the GS-11 and GS-12, and that's the testimony that Ms. Bekwar has cited in her brief as him possibly not completely standing behind this record. And then two pages later he's asked very directly, did she perform at the GS-12 level? And the answer is no, she was not at that time performing at the GS-12 level. What's your response to Mr. Jenke's argument that the AJ's and therefore the board's view of this case was tainted, irrevocably tainted by his misunderstanding of what she had to prove? Well, the administrative judge got it wrong. He applied the wrong burdens at the original hearing. The board took a second look at that and corrected the matter, but if you look at it from a practical standpoint, what she was asked to do at the hearing was rise to a higher level of burden of proof, and she attempted to do so and wasn't able to do that, and the administrative judge found that. When it was corrected, essentially what happened was the bar was lowered for her. There was nothing more to go back and do. She had put on more evidence than she had originally intended to, one would assume, to meet the higher level of burden. She had every opportunity to put on the evidence of discrimination, which was not incorrectly assigned one way or the other. The board looked at the evidence and decided that the record was fully developed. In fact, it was, and to the question that this court answered, what is the error that occurred? There was none. The miscellaneous objections don't rise to the level of an error that affected the outcome of the trial. You don't think as a pro se litigant the board might have remanded it back to an A.J. who understood the proper burdens? Well, only if there was a need to look at the record further, and I think the issue here was not whether she was misdirected. She was asked to do more at the trial level than what she was required to do, and so there wasn't a need to go back and say, okay, put on less evidence. There was no need to do that. The record that had been developed, and this is what the full board found, was fully developed, and that they had enough to go back and look at the burdens that would correctly apply would go one way or the other, and I think part of it was that the evidence that she put on through Mr. Stahlhaber, but also came through the documentary record, Ms. Crock and Mr. Hawkins, was so overwhelming that she simply wasn't able to perform at the GS-12 level. Every single project that was discussed, she simply could not do the work, and that was simply overwhelming enough that there was nothing more for the board to do, and with respect to the discrimination side, the first burden under you, Sarah, that was correctly assigned at the A.J. level, and there was nothing more to do there as well. She actually had two reviews, didn't she? First at the A.J., by the A.J., and then by the full board, which is not the usual case. That's correct, Your Honor. I would also suggest this is not her first action on this exact same set of damages. She initiated an arbitration and was represented by the union at that level. She lost there as well. This case has been very well reviewed by a number of tribunals, including here today, and we believe that in every instance it was found out correctly that she was unable to prove her burdens under each one of those cases, and for those reasons, we would ask that this court affirm the decision of the MSPB that the Department of Labor made the correct decision in not promoting this backlog. Thank you, Mr. Regner. Mr. Johnkey, you have a little more than two minutes left. Thank you. Your Honor, just a couple points where I really disagree with the agency on this. The decision was not made in the fall by Mr. Hawkins. The decision was made in February by Mr. Stahlhaber. So there is no basis for extending that decision time to include any of Mr. Hawkins' testimony when he didn't even come on board until April and the decision was made in February. That's when every other decision was made on every one of Ms. Becquart's other promotions, and that's when the decision was made. Excuse me. Is there some kind of a regulation that requires promotions to be made at a certain month? It's not within a certain month, Your Honor, but it was a pattern in practice. On the anniversary date, basically, you would become eligible for your promotion, and that's what happened with Ms. Becquart. Eligibility that can go through a review process, and as a matter of fact, it sounds like there were two reviewers here, both Mr. Stahlhaber and Mr. Hawkins, but Mr. Hawkins is the one who makes the decision, right? They're claiming that he made the decision, but actually also— Did he make the decision? No, we don't believe he did. Did he make the decision? Mr. Hawkins? He's the one who says he made the decision. He's the one who testifies. You're challenging his statement in the record? He may have made a second decision, but the decision that was made here that Ms. Becquart is complaining about is the one that was— What is the decision that the administrative judge and the board reviewed? They were focusing on the decision, because this was Ms. Becquart's claim, in denying her promotion in February 2004, and that's clear when you look at the way even the administrative judge described what he was looking at was whether the denial in February 2004 was a violation of USERRA. It's also clear when you look at even the Department of Labor's brief, it says really the date of notification, which is how they referred to Mr. Hawkins' testimony in their brief, was that was just a notification that was made in September 2004. Now they're changing it to be a decision, because they want to sweep in all this testimony of what happened after February. If they wanted to extend that period, that should have been their burden as part of their case of showing it would have denied the promotion for other reasons to establish why that that period should have been extended. Thank you, Mr. Shonkin.